Robert J. PIGMAN, Appellant–Plaintiff,

v.

AMERITECH PUBLISHING, INC. and Indiana Bell Telephone Company, Incorporated, Appellees–Defendants.

No. 82A01–9311–CV–364.

Court of Appeals of Indiana, First District.

Oct. 24, 1994.

Theodore Lockyear, James A. Kornblum, Lockyear & Kornblum, Evansville, for appellant.

F. Wesley Bowers, David E. Gray, Bowers, Harrison, Kent & Miller, Evansville, for appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Robert J. Pigman brings this interlocutory appeal from the trial court's order granting partial summary judgment in favor of Ameritech Publishing, Inc. ("API").[1] Pigman filed an action for damages against API and Indiana Bell Telephone Company, Incorporated ("Indiana Bell"), both wholly owned subsidiaries of Ameritech, Inc., and alleged that they had wrongfully omitted his advertising listing both as a member of his law firm and as an individual attorney from the 1992 Evansville Metropolitan Area White/Yellow Ameritech PagesPlus Telephone Directory ("Yellow Pages"). API filed a motion for partial summary judgment and asserted that its liability was limited under the contract with Pigman's employer, who had subscribed for advertising in the Yellow Pages on his behalf. The trial court then granted API's motion based on the limitation of liability clause in the advertising contract.

We reverse and remand.[2]

### ISSUES

Pigman raises three issues for our review. Because we conclude that one issue is dispositive, we address only the following question: whether an exculpatory clause contained in API's Yellow Pages advertising contract is unconscionable and void as against public policy as a matter of law.

---

1. We have jurisdiction of this cause pursuant to Appellate Rule 4(B)(6).

2. We heard oral argument on August 29, 1994.

## FACTS

While soliciting advertising orders for the 1992–93 Yellow Pages, an API representative contacted Sheila Corcoran, a partner in the law firm of Berger & Berger, to discuss and finalize the firm's advertising listing for that year. Acting on behalf of both the law firm and Pigman, who was then an associate with Berger & Berger, Corcoran met with the API representative on August 7, 1991, and placed an order for advertising in the 1992 Yellow Pages. Corcoran ordered a display ad for the law firm and an individual advertising listing for each attorney in the firm, including Pigman.

Following that meeting, Corcoran spoke with the API representative over the telephone, and on August 27, 1991, the representative mailed Corcoran a copy of the Advertising Order for Berger & Berger's 1992–93 Yellow Pages ad. The Advertising Order is a standard form prepared by API which lists the customer's request for advertising. Corcoran did not sign the Advertising Order and made no changes to the firm's ad as it appeared on the order form. Berger & Berger then paid the full subscription price required under the contract. When the 1992–93 Yellow Pages directory was published, Pigman discovered that he did not have an individual listing and had been omitted altogether from the firm's advertisement.

Pigman filed his complaint for damages with the Vanderburgh Circuit Court on September 28, 1992. API then filed its motion for partial summary judgment and alleged that any damages to which Pigman may be entitled were limited to the amount set forth in a clause of the Advertising Order designated "PUBLISHER'S LIABILITY." After a hearing on API's motion, the trial court entered an order granting partial summary judgment in favor of API. Shortly thereafter, Pigman filed his motion for certification of interlocutory appeal, and the trial court granted his motion.

API then filed a motion to amend the trial court's order and requested that the court "specify the facts that appear without substantial controversy," in accordance with Trial Rule 56(D). Record at 274. On November 19, 1993, the court entered its amended order, which provides in pertinent part:

THIS CAUSE came to be heard on the Motion of Defendant, Ameritech Publishing, Inc. ("API"), for Partial Summary Judgment pursuant to Trial Rule 56, Indiana Rules of Procedure, and the Court having considered the pleadings in the action, the memorandum submitted, and having heard the oral statements of counsel, concludes that Defendant is entitled to partial summary judgment as a matter of law, and the Court further specifies the following facts that appear without substantial controversy:

1. Plaintiff, Robert J. Pigman ("Pigman"), at all relevant times was an Attorney-at-Law and associate with the law firm of Berger & Berger, in Evansville, Indiana.

2. Defendant, API, is a Delaware corporation engaged in the publishing and distribution of the 1992 Evansville Metropolitan Area White/Yellow Pages Ameritech PagesPlus Telephone Directory (the "Directory").

3. On behalf of Pigman and for itself, and acting through its agent, Sheila M. Corcoran, Berger & Berger contracted with API for the placement of an advertisement in the 1992 Directory by virtue of a "Directory Advertising Order."

4. The Directory Advertising Order placed the Berger & Berger advertisement in the 1992 Directory for a monthly fee (specifically One Thousand One Hundred Eighty Dollars Fifty Cents ($1,180.50) per month).

5. The back page of the contract contains the terms which govern the rights and duties of the parties.

6. The paragraph entitled *PUBLISHER'S LIABILITY* states:

IF PUBLISHER SHOULD BE FOUND LIABLE FOR LOSS OR DAMAGE DUE TO A FAILURE ON THE PART OF PUBLISHER OR ITS DIRECTORY, IN ANY RESPECT, REGARDLESS OF WHETHER CUSTOMER'S CLAIM IS BASED ON CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE, THE LIABILITY SHALL BE LIMITED

TO AN AMOUNT EQUAL TO THE CONTRACT PRICE FOR THE DISPUTED ADVERTISEMENTS, OR THAT SUM OF MONEY ACTUALLY PAID BY CUSTOMER TOWARD THE DISPUTED ADVERTISEMENTS, WHICHEVER SUM SHALL BE LESS, AS LIQUIDATED DAMAGES AND NOT AS A PENALTY, AND THIS LIABILITY SHALL BE EXCLUSIVE. IN NO EVENT SHALL PUBLISHER BE LIABLE FOR ANY LOSS OF CUSTOMER'S BUSINESS, REVENUES, PROFITS, THE COST TO CUSTOMER OF OTHER ADVERTISEMENTS OR ANY OTHER SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES OF ANY NATURE, OR FOR ANY CLAIM AGAINST CUSTOMER BY ANY THIRD PARTY.

7. The Directory Advertising Order was sent to Sheila Corcoran, as agent for Berger & Berger and Pigman, on or about August 27, 1991.

8. Ms. Corcoran is a partner in the law firm of Berger & Berger.

9. Berger & Berger has paid in full the amounts due under the Directory Advertising Order.

10. The Court further finds that the damages to which the Plaintiff may be entitled at the trial of this cause are limited to as set forth under *PUBLISHER'S LIABILITY* as hereinabove stated.

AND IT IS HEREBY ORDERED that Defendant's Motion for Partial Summary Judgment is in all respects granted; and it is

FURTHER ORDERED AND ADJUDGED that Ameritech Publishing, Inc.'s liability is limited to an amount equal to the contract price for the disputed advertisements, or the sum of money actually paid toward the disputed advertisements, whichever sum shall be less.

Record at 279–81. Pigman then filed his petition for interlocutory appeal with this court, which we accepted. We will state additional facts where necessary.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing a ruling on a motion for summary judgment, we conduct the same inquiry followed by the trial court. *Selleck v. Westfield Insurance Co.* (1993), Ind.App., 617 N.E.2d 968, 970, *trans. denied.* The party seeking summary judgment bears the burden of establishing the propriety of the motion. *Gaboury v. Ireland Road Grace Brethren, Inc.* (1983), Ind., 446 N.E.2d 1310, 1313. Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). All facts and inferences from the designated evidentiary matter must be liberally construed in favor of the nonmoving party. *Selleck,* 617 N.E.2d at 970. We will affirm summary judgment on any legal theory which is consistent with the designated evidence in the record. *See Valley Federal Sav. Bank v. Anderson* (1993), Ind.App., 612 N.E.2d 1099, 1102.

### Exculpatory Clauses

Pigman contends the exculpatory clause in API's advertising contract is unconscionable and should be held void as against public policy. Our courts have previously addressed whether exculpatory clauses in general are against public policy. However, the enforceability of such clauses in a contract for Yellow Pages advertising is a question of first impression in Indiana. API maintains that while Indiana courts have not addressed this particular question, the majority of jurisdictions which have considered the issue have held that such an exculpatory clause in a Yellow Pages advertising contract is enforceable.

A contract is thought to be the product of the free bargaining of the parties. *Weaver v. American Oil Co.* (1971), 257 Ind. 458, 463, 276 N.E.2d 144, 147. As a general rule, the law allows persons of full age and competent understanding the utmost liberty of contracting, and their contracts, when entered into freely and voluntarily, are enforced by the courts. *See id.* It is in the

best interest of the public that persons should not be unnecessarily restricted in their freedom of contract. *Hodnick v. Fidelity Trust Co.* (1932), 96 Ind.App. 342, 350, 183 N.E. 488, 491. Accordingly, "Indiana has long adhered to the rule that contracting parties may enter into any agreement they desire so long as it is not illegal or contrary to public policy." *Greenhaven Corp. v. Hutchcraft & Associates* (1984), Ind.App., 463 N.E.2d 283, 285 n. 1.

 Likewise, Indiana recognizes exculpatory clauses. *General Bargain Center v. American Alarm Co.* (1982), Ind.App., 430 N.E.2d 407, 411; *see Loper v. Standard Oil Co.* (1965), 138 Ind.App. 84, 211 N.E.2d 797; *Franklin Fire Ins. Co. v. Noll* (1945), 115 Ind.App. 289, 58 N.E.2d 947. In *General Bargain Center*, we described how our courts have viewed contracts which include exculpatory clauses:

> Parties are permitted to make such contracts so long as they are knowingly and willingly made and free from fraud. No public policy exists to prevent such contracts. However, *exceptions exist where the parties have unequal bargaining power, the contract is unconscionable, or the transaction affects the public interest such as utilities, carriers, and other types of businesses generally thought to be suitable for regulation or which are thought of as a practical necessity for some members of the public.*

*General Bargain Center*, 430 N.E.2d at 411–12 (citing *Weaver*, 257 Ind. 458, 276 N.E.2d 144; *LaFrenz v. Lake County Fair Board* (1977), 172 Ind.App. 389, 360 N.E.2d 605, 607–08) (emphasis added). Therefore, absent one of the exceptions noted, exculpatory clauses are generally enforced and are not void on public policy grounds.

 " 'Whether or not a contract is against public policy is a question of law for the court to determine from all of the circumstances in a particular case.' " *Stampco Construction Co., Inc. v. Guffey* (1991), Ind.App., 572 N.E.2d 510, 513 (quoting *Ross Clinic, Inc. v. Tabion* (1981), Ind.App., 419 N.E.2d 219, 223, *trans. denied* ). "Agreements are not to be held void as against public policy unless they are clearly contrary to what the

legislature has declared to be public policy, or unless they *clearly tend to injure the public in some way. " Id.* (emphasis added). In making that determination, we must also "weigh in the balance the parties' freedom to contract." *Allstate Ins. Co. v. Boles* (1985), Ind., 481 N.E.2d 1096, 1101.

In *Weaver,* a landmark Indiana case on unconscionability, our supreme court reaffirmed the use of exculpatory clauses generally but held:

> When a party can show that the contract, which is sought to be enforced, was in fact an unconscionable one, due to a prodigious amount of bargaining power on behalf of the stronger party, which is used to the stronger party's advantage ..., causing a great hardship and risk on the lesser party, the contract provision, or the contract as a whole ... should not be enforceable on the grounds that the provision is contrary to public policy.

*Weaver,* 257 Ind. at 464, 276 N.E.2d at 148; *see Sho–Pro of Indiana, Inc. v. Brown* (1992), Ind.App., 585 N.E.2d 1357, 1361. The supreme court further recognized that "the freedom of contract" could be "a threat to the social order as a whole" in our modern society, when it observed:

> [I]n present-day commercial life the standardized mass contract has appeared. It is used primarily by enterprises with strong bargaining power and position. The weaker party, in need of goods or services, is frequently not in a position to shop around for better terms, either because the author of the standard contract has a monopoly (natural or artificial) or because all competitors use the same clauses.

*Weaver,* 257 Ind. at 463, 276 N.E.2d at 147. While the legal principles and rationale of the *Weaver* decision provide guidance in our determination whether the exculpatory clause at issue here is unconscionable, the circumstances and questions presented in this case are substantially different.

The foregoing authorities demonstrate that Indiana courts recognize the validity of contracts which contain exculpatory clauses and have rejected claims that contractual limita-

tions of remedy are substantively unconscionable. *See Martin Rispens & Son v. Hall Farms, Inc.* (1993), Ind., 621 N.E.2d 1078, 1087 (in sale of goods under Article 2, agreement of parties to limit remedy not unconscionable even though defect was latent). However, our courts have also refused to enforce such clauses in specific instances. Those exceptions to the general rule include where the parties have unequal bargaining power, the contract is unconscionable, or the transaction affects the public interest, as where the business involved is suitable for regulation or provides a necessity for members of the public. *See General Bargain Center,* 430 N.E.2d at 411–12.

Because the specific issue presented in this case concerns an exculpatory clause in a contract for Yellow Pages advertising and has not been addressed previously by an Indiana court, Pigman relies upon a number of cases from other jurisdictions which have addressed this issue. Based on those decisions, Pigman contends that an exculpatory clause in a Yellow Pages advertising order is unconscionable as a matter of law and falls within one of the recognized exceptions to the general rule in Indiana that such clauses are not against public policy. We now turn our attention to how other jurisdictions have addressed the question presented in this case.

## Other Jurisdictions

The enforceability of an exculpatory clause in a Yellow Pages advertising contract has been considered in numerous other jurisdictions. A split of authority has developed. A larger number of jurisdictions has upheld the exculpatory clauses.[3] However, we think the better reasoning is found in the line of cases which refuse to enforce such clauses in Yellow Pages advertising. We find particularly persuasive the decisions from the appellate courts of Wisconsin, Michigan and Alabama, as well as Texas and South Dakota, which have all rejected an exculpatory clause in a Yellow Pages advertising contract as unconscionable and contrary to the public interest. The underlying rationale of those decisions is that the Yellow Pages is a unique advertising medium inextricably linked to the telephone company's public service function and that the telephone company or publisher possesses a decisive bargaining advantage over its subscribers.

In *Discount Fabric House of Racine, Inc. v. Wisconsin Telephone Co.* (1984), 117 Wis.2d 587, 345 N.W.2d 417, the Wisconsin

**3.** *See Mendel v. Mountain States Tel. & Tel. Co.* (1977), 117 Ariz. 491, 573 P.2d 891; *Robinson Ins. & Real Estate, Inc. v. Southwestern Bell Tel. Co.* (W.D.Ark.1973), 366 F.Supp. 307; *Davidian v. Pacific Tel. & Tel. Co.* (1971), 16 Cal.App.3d 750, 94 Cal.Rptr. 337; *University Hills Beauty Acad., Inc. v. Mountain State Tel. & Tel. Co.* (1976), 38 Colo.App. 194, 554 P.2d 723; *Ed Fine Oldsmobile, Inc. v. Diamond State Tel. Co.* (1985), Del., 494 A.2d 636; *Neering v. Southern Bell Tel. Co.* (S.D.Fla.1958), 169 F.Supp. 133; *Southern Bell Tel. & Tel. Co. v. C & S Realty Company,* (1977), 141 Ga.App. 216, 233 S.E.2d 9 (overruled in part on other grounds); *Georgia–Carolina Brick and Tile Co. v. Brown* (1980), 153 Ga.App. 747, 266 S.E.2d 531; *McClure Engineering Assocs., Inc. v. Reuben H. Donnelley Corp.* (1983), 95 Ill.2d 68, 69 Ill.Dec. 183, 447 N.E.2d 400; *Woodburn v. Northwestern Bell Tel. Co.* (1979), Iowa, 275 N.W.2d 403; *Holman v. Southwestern Bell Tel. Co.* (D.Kan.1973), 358 F.Supp. 727; *Louisville Bear Safety Service, Inc. v. South Central Bell Tel. Co.* (1978), Ky., 571 S.W.2d 438; *Wilson v. Southern Bell Tel. & Tel. Co.* (1967), La.App., 194 So.2d 739; *Baird v. Chesapeake and Potomac Tel. Co.* (1955), 208 Md. 245, 117 A.2d 873; *Warner v. Southwestern Bell Tel. Co.* (1968), Mo., 428 S.W.2d 596; *Montana ex rel. Mountain States Tel. & Tel. Co. v. District Court In and For Silver Bow County,* (1972), 160 Mont. 443, 503 P.2d 526; *Bernstein v. G.T.E. Directories Corp.* (D.Nev. 1986), 631 F.Supp. 1551; *PK's Landscaping v. New England Tel. & Tel. Co.* (1986), 128 N.H. 753, 519 A.2d 285; *Federal Building Service v. Mountain States Tel. & Tel. Co.* (1966), 76 N.M. 524, 417 P.2d 24; *Hamilton Employment Service v. New York Tel. Co.* (1930), 253 N.Y. 468, 171 N.E. 710; *Gas House v. Southern Bell Tel. & Tel. Co.* (1976), 289 N.C. 175, 221 S.E.2d 499 (overruled in part on other grounds); *North Carolina ex rel. Utilities Comm. v. Southern Bell Tel. & Tel. Co.* (1983), 307 N.C. 541, 299 S.E.2d 763; *Cunha v. Ohio Bell Tel. Co.* (1970), 26 Ohio Misc. 267, 55 O.O.2d 430, 271 N.E.2d 321; *Wheeler Stuckey, Inc. v. Southwestern Bell Tel. Co.* (W.D.Okla. 1967), 279 F.Supp. 712; *Georges v. Pacific Tel. & Tel. Co.* (D.Ore.1960), 184 F.Supp. 571; *Behrend v. Bell Tel. Co. of Pa.* (1978), 257 Pa.Super. 35, 390 A.2d 233; *Pride v. Southern Bell Tel. & Tel. Co.* (1964), 244 S.C. 615, 138 S.E.2d 155; *Smith v. Southern Bell Tel. & Tel. Co.* (1962), 51 Tenn. App. 146, 364 S.W.2d 952; *Atkin Wright & Miles v. Mountian States Tel. & Tel. Co.* (1985), Utah, 709 P.2d 330; *McTighe v. New England Tel. & Tel. Co.* (2nd Cir.1954), 216 F.2d 26; and *Allen v. General Tel. Co. of the Northwest* (1978), 20 Wash.App. 144, 578 P.2d 1333.

Supreme Court addressed whether a similar exculpatory clause in a Yellow Pages advertising contract was unconscionable as against the public policy of Wisconsin. In *Discount Fabric*, a drapery business brought an action against the telephone company for the negligent omission of its "long-standing" corporate name from the company's ad in the 1978 Yellow Pages directory and sought to recover damages for business losses resulting from the telephone company's error. The telephone company raised as a defense a "limited liability provision" from the advertising contract between the parties. After noting that the clause at issue was "exculpatory" in nature, the court found it to be unconscionable and against public policy.

In a well-reasoned opinion which acknowledged the limited supporting authority from other jurisdictions, the Wisconsin Supreme Court in *Discount Fabric* stated:

> The contract between the parties arises from a business subjected to public regulation except for the particular act contracted for, *i.e.*, commercial advertising in the yellow pages. The telephone company seeks exculpation in assembling and publishing the yellow pages. In publishing the yellow pages the telephone company is engaged in performing a service of great, if not essential, importance to the public and it holds itself out as willing to give *reasonable* public service to all who apply to place ads in the yellow pages. The telephone company possesses a decisive advantage of bargaining strength.

*Id.* 345 N.W.2d at 421 (emphasis in original). The court went on to conclude the exculpatory clause at issue in *Discount Fabric* was "against public policy in that the parties are not on equal bargaining terms and the telephone company has created a public interest in the publication of the yellow pages which requires that the telephone company perform its private duty to the ad subscriber without negligence or be held for damages." *Id.* at 423–24. Accordingly, the court held that the clause was unenforceable.

Similarly, in *Allen v. Michigan Bell Telephone Co.* (1969), 18 Mich.App. 632, 171 N.W.2d 689, the Michigan Court of Appeals upheld exculpatory clauses in general but

found that the specific clause in the telephone company's Yellow Pages contract was against public policy. The court stated:

> Implicit in the principle of freedom of contract is the concept that at the time of contracting each party has a realistic alternative to acceptance of the terms offered. Where goods and services can only be obtained from one source (or several sources on noncompetitive terms) the choices of one who desires to purchase are limited to acceptance of the terms offered or doing without. Depending on the nature of the goods or services and the purchaser's needs, doing without may or may not be a realistic alternative. Where it is not, one who successfully exacts agreement to an unreasonable term cannot insist on the courts enforcing it on the ground that it was 'freely' entered into, when it was not. He cannot in the name of freedom of contract be heard to insist on enforcement of an unreasonable contract term against one who on any fair appraisal was not free to accept or reject that term.

*Id.* 171 N.W.2d at 692. The Michigan court concluded that the parties were "not in positions of equal bargaining power," because (1) the Yellow Pages was the only classified directory freely distributed to all telephone subscribers, (2) the contract between the parties was a standard form prepared by the telephone company and used by them in all advertising agreements, and (3) the subscriber could not have bargained for different terms in the contract. *Id.* at 693. In short, the court in *Allen* found that the contract was "strictly a 'take it or leave it' proposition" and that it would "not be enforced as a matter of public policy." *Id.* at 693–94.

The Alabama Supreme Court has also held that an exculpatory clause limiting liability in a Yellow Pages advertising contract was unenforceable because it was contrary to public policy. In *Morgan v. South Central Bell Telephone Co.* (1985), Ala., 466 So.2d 107, the court concluded that Yellow Pages advertising was unique and that the telephone company held a superior position of bargaining strength. The court determined that:

> The contract arises out of a private business transaction of the telephone company

which in all other respects is regulated by the Public Service Commission in performing its services. Certainly, the telephone company would not argue that it is engaged in a business other than one which performs a service of great importance to the public when it distributes a Yellow Pages book without cost to every telephone customer. The telephone company without question holds itself out as willing to give reasonable public service to all who apply for an advertisement in the Yellow Pages.

\* \* \* \* \* \*

The telephone company has an exclusive private advertising business which is tied to its public utility service of providing telephone service and which reaches almost every home and office in the state. Therefore, the telephone company can state to a customer that an ad will be published but name its own terms, including a limitation of its own liability for negligence.

*Id.* at 117–18. Finally, the court held that the subscribers "did not have a meaningful choice relative to the inclusion of an exculpatory clause" in the contract and that the telephone company "had the bargaining power in a gross and unbalanced manner in determining the terms and conditions in the directory advertisement." *Id.* at 118.

■ Relying on the reasoning of the courts in *Discount Fabric, Allen* and *Morgan,* in addition to decisions from Texas and South Dakota,[4] Pigman likewise asserts that API's exculpatory clause in its Yellow Pages advertising contract is unconscionable and unenforceable. API relies on the rule adopted in the larger number of jurisdictions and counters that sound public policy supports its use of an exculpatory clause. We cannot agree with API.

### Proof of Damages and Threatened Consequences

API asserts that "the limitation of liability provision at issue in fact *promotes* public policy by keeping Yellow Pages advertising rates lower than they would otherwise be if publishing companies were exposed to claims for consequential damages." Brief of Appellee at 15 (emphasis in original). They further argue that the contract language is "tailored to avoid the heavy economic burdens and costs that [the] customer would ultimately bear if directory publishers were subjected to the risks of speculative verdicts regarding allegations of 'lost profits.'" Brief of Appellee at 15. Indeed, API contends that if we conclude the exculpatory clause in this case is unconscionable and unenforceable, "it will mean higher advertising rates for yellow page advertisers." Brief of Appellee at 10.

■ First, we reject API's contention that if the exculpatory clause is unconscionable and unenforceable it will result in a risk of "speculative verdicts" for "lost profits." Indiana, like other states, utilizes a jury instruction which does not permit an award of damages based on speculation. A plaintiff's damages in a breach of contract action is limited to the amount that would place the plaintiff in the same position he would have been had the contract been fulfilled. *See* Indiana Pattern Jury Instruction 33.23. Similarly, other jurisdictions have held the speculative damages argument invalid because of the protection given by the jury system, instructions given to the jury and trial judges' rulings during trial. *See Discount Fabric,* 345 N.W.2d at 422. In sum, API's argument lacks merit because Pigman has the same evidentiary burden in this case as a plaintiff in any other case.

Further, the speculative damages argument API raises has been asserted by telephone companies in most, if not all, of the jurisdictions which have addressed whether an exculpatory clause in a Yellow Pages con-

4. Those cases include the Texas Court of Appeals decision in *Reuben H. Donnelley Corp. v. McKinnon* (1985), Tex.App., 688 S.W.2d 612, and the South Dakota Supreme Court's decision in *Rozeboom v. Northwestern Bell Telephone Co.* (1984), S.D., 358 N.W.2d 241. Ameritech has questioned whether *Reuben* is still good law after the Texas Supreme Court's decision in *Southwestern Bell Telephone Co. v. DeLanney* (1991), Tex., 809 S.W.2d 493, where a concurring Justice wrote that he did not believe that the exculpatory clause at issue was unconscionable. However, the majority opinion of the court did not reach that issue.

tract is against public policy. "In this argument there is an implied threat of advertising rates going up if [API] is subject to being held financially responsible for its negligent acts of publication." *See id.* at 422–23. Other jurisdictions have labeled API's argument the "threatened consequences" theory. Like the Wisconsin Supreme Court in *Discount Fabric*, we reject the threatened consequences theory as a criterion for deciding this case. *See id.* at 423. As a practical matter, most Yellow Pages listings are accurate and we do not believe there is any sound reason why API should be exempt from liability in those few instances where it makes an advertising error. "As long as such advertising has value, as it obviously does, there will be those in the public who will subscribe for it. The costs of the ads are only one factor in their attractive value to the public subscribers." *See id.* In sum, because API would only be held liable to its subscribers for damages caused by its own acts, in that respect we do not think its position in the business world would be any different than the vast majority of other commercial enterprises. *See id.* at 422.

Under API's Yellow Pages advertising contract, API is exculpated or relieved from any liability for its errors in publishing a subscriber's ad. The only remedy provided by API is to return the lesser of the "contract price" or the "sum of money actually paid" by the subscriber for the advertisement. The effect of API's exculpatory clause is to ignore "the resulting injury to the customer caused by its negligent or tortious act in not publishing the advertisement for which the customer had contracted." *See id.* at

419. At most, API is required to disgorge the purchase price. "Returning charges for the ad not earned due to negligence is not the same as paying damages for the mistake made." *Id.* Accordingly, the remedy provided under API's advertising contract is illusory.[5]

## Unequal Bargaining Power and Meaningful Choice

API boasts that "95% of the buyers in the Directory area of Evansville use the Ameritech PagesPlus, the complete Indiana Bell Yellow Pages." *See* Supplemental Record at 141. API's claim confirms what we as judges, and Indiana citizens, know to be true. The Yellow Pages is a unique and unparalleled advertising vehicle which permeates the marketplace. There is no means available to the public at this time to obtain advertising penetration equivalent to that of·the Yellow Pages.[6]

API is a wholly owned subsidiary of Ameritech, Inc., which also owns Indiana Bell Telephone Company, Incorporated, and is subject to regulation by the Indiana Utility Regulatory Commission. Although Yellow Pages advertising is not subject to a tariff,[7] there is an unmistakable nexus between regulated telephone service and the Yellow Pages. As publisher of the Yellow Pages, API performs a service of great importance to the public of this state when it distributes a Yellow Pages directory, without cost, to nearly every home and business in Indiana. Further, API holds itself out as willing to carry advertisements in the Yellow Pages for all those who wish to subscribe. Therefore, we believe API cannot enjoy a virtual lock on this unique and important form of advertis-

**5.** Pigman also contends that the exculpatory clause at issue here offends the public policy of this state as expressed in our Constitution. Article I, section 12 of the Indiana Constitution provides in pertinent part: "All courts shall be open; and every person, for injury done to him and his person, property, or reputation, shall have remedy by due course of law." However, we do not decide this case on constitutional grounds.

**6.** We observe that sometime in the not very distant future, when every home and business is online, people may do their shopping for goods and services through the Internet. When that occurs, the printed Yellow Pages directory will no longer enjoy the unique market penetration which it does today. Then, the print medium

will be preempted by the information superhighway, and the printed Yellow Pages will no longer enjoy preeminence. Today, when an error is made, the error persists for a full year until the next edition is published. When the Yellow Pages is on the Internet, errors in advertising copy will be corrected with a few keystrokes, and such instant mitigation may well obviate a claim for damages of the kind presented in this case.

**7.** A "tariff" is "a public document setting forth ·services of common carrier being offered, rates and charges with respect to services and governing rules, regulations and practices relating to those services." *Black's Law Dictionary* at 1456–57 (6th ed. 1990).

ing derived from its monopoly status and, at the same time, enjoy exculpation from liability for its advertising errors.

Under Indiana law, when a contract tends to injure the public in some manner, it should be held void as against public policy. *See Stampco Construction Co.*, 572 N.E.2d at 513. Here, as a result of API's own commercial efforts, the Yellow Pages have become an indispensable feature of telephone service for all Indiana citizens, including those persons living and working in the Evansville metropolitan area serviced by API in this case. Indeed, API is virtually the only source of classified directory listings that are distributed without charge among nearly all members of the public. As such, API can present to its Yellow Pages subscribers a standardized form advertising contract on a "take it or leave it basis." Left with no meaningful choice other than not to place an ad in the directory, subscribers must accept API's unreasonable contract terms.

The advertising order presented to Pigman's law firm in this case is a standardized form contract. A "contract of adhesion" is defined as "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." 17 C.J.S. Contracts § 10. It is also defined as a "standardized contract form offered to consumers of goods and services on essentially [a] 'take it or leave it' basis without affording consumer realistic opportunity to bargain and under such conditions that consumer cannot obtain desired product or services except by acquiescing in form contract." *Black's Law Dictionary* at 40 (6th ed. 1990). Contracts of adhesion appear in many circumstances and are not per se unconscionable. We acknowledge and affirm the public policy which favors freedom of contract but conclude that such freedom is illusory in a contract of adhesion under the circumstances of this case.

The exclusive nature of API's advertising business creates for it a decisive bargaining advantage over a subscriber such that the subscriber is put "at the mercy" of API's errors. *See LaFrenz*, 360 N.E.2d at 608 (citing Prosser, *Law of Torts* § 68, at 442

(4th ed. 1971)). However, superior bargaining power alone is not sufficient to render an exculpatory clause unconscionable. *See* Calamari and Perillo, *Contracts* § 9–40 (3rd ed. 1987). "There must be additional factors, as for example, a lack of meaningful choice as in the case of an industry wide form contract heavily weighted in favor of one party and offered on a take it or leave it basis." *See id.* Such is the case here.

As we have discussed, there is no other mode of advertising available to Pigman that reaches as many people, is similar in nature to the Yellow Pages, and is inexorably tied to telephone service. The controlling factor is not whether there are other methods of advertising available, as some jurisdictions have held, but whether such other methods are tied directly to telephone service. It is this nexus between regulated telephone service and Yellow Pages commercial advertising which invokes greater judicial scrutiny for public policy considerations. The exculpatory clause in API's contract results from its monopoly status and decisive bargaining advantage over subscribers, which are derived from API's unique and important public service function. Although Yellow Pages advertising is a matter of private contract, API enjoys an exclusive advertising business which is tied to the telephone company's public utility service. *See Discount Fabric*, 345 N.W.2d at 421. Thus, a subscriber's lack of meaningful choice cannot be justified as the product of the free bargaining of the parties.

We hold that the exculpatory clause contained in API's Yellow Pages advertising contract is unconscionable and void as against public policy as a matter of law. The trial court's order granting partial summary judgment in favor of API and finding that API's liability was limited under the advertising contract with Pigman's law firm is reversed. This cause is remanded for trial on Pigman's breach of contract claim.

Reversed and remanded.

ROBERTSON and STATON, JJ., concur.