Robert J. PIGMAN, Appellant–Plaintiff,

v.

AMERITECH PUBLISHING, INC. and Indiana Bell Telephone Company, Incorporated, Appellee–Defendant.

No. 82A01–9311–CV–364.

Court of Appeals of Indiana, First District.

May 11, 1995.

Theodore Lockyear, James A. Kornblum, Lockyear & Kornblum, Evansville, for appellant.

F. Wesley Bowers, David E. Gray, Bowers, Harrison, Kent & Miller, Evansville, for appellees.

## OPINION ON REHEARING

NAJAM, Judge.

■ We issue this opinion on rehearing to address contentions raised by the Appellee, Ameritech Publishing, Inc., ("API"), concerning our decision in *Pigman v. Ameritech Publishing, Inc.* (1994), Ind.App., 641 N.E.2d 1026. API contends that we did not have a sufficient record before us to reach the conclusion that API's Yellow Pages advertising contract was unconscionable and, hence, unenforceable. *See id.* at 1035. According to API, our opinion "is based, in large part, upon evidence not in the Record and assumptions that API was never given an opportunity to rebut." Brief of Appellee on Rehearing at 1. In the alternative, API argues that whether its exculpatory clause is enforceable presents a question of fact and that this case should be remanded to the trial court for a factual determination. We cannot agree.

■ The dispositive issue presented by the parties on appeal was "whether an exculpatory clause contained in API's Yellow Pages advertising contract is unconscionable and void as against public policy as a matter of law." *Id.* at 1027. Central to the resolution of that issue was Pigman's contention that API's exculpatory clause falls within a recognized exception to the general rule in Indiana that such clauses are not against public policy. *Id.* at 1031. As we wrote, one such exception is "where the transaction affects the public interest, as where the busi-

ness involved is suitable for regulation or provides a necessity for members of the public." *Id.* Contrary to API's assertion on rehearing, we focused on those facts and inferences from the record which, in light of the general rule and the recognized exception above, would resolve this dispute.

Our opinion was supported by API's own advertising claims. The "controlling factor" was that the Yellow Pages is "tied directly to telephone service," and our analysis was based upon the "nexus between regulated telephone service and Yellow Pages commercial advertising." *Id.* at 1035. API acknowledges that relationship when it describes its directory as "The Complete Indiana Bell Yellow Pages." Supplemental Record at 139 and 141. Indeed, as in many other Indiana communities, API publishes a telephone directory for Evansville which combines the Indiana Bell White Pages and API's Yellow Pages in a single volume, the "Evansville Metropolitan Area White/Yellow Pages Ameritech PagesPlus Telephone Directory." *Id.* at 1028 (Trial Court Finding # 2).

According to API, the Yellow Pages provides "directional advertising" which is the "connecting link between buyer and seller." Supplemental Record at 143. API maintains that 94.3% of the households in the Evansville directory area have telephones and that API provides "continual distribution" of the Yellow Pages directory which is "delivered to new [Indiana Bell] customers almost as fast as their phone is connected!" Supplemental Record at 139 and 160. Finally, as we noted in our opinion, API boasts that "95% of the buyers in the Directory area of Evansville use the Ameritech PagesPlus, the complete Indiana Bell Yellow Pages." *Pigman,* 641 N.E.2d at 1034; Supplemental Record at 141.

This evidence demonstrates that the market penetration of the Yellow Pages is fully integrated and co-extensive with the reach of Indiana Bell telephone service within the same service area. It also supports our conclusion that API's advertising contract is not the result of free market economics but of the intimate relationship between Indiana Bell and API. *See id.* at 1035. The contract exemplifies the standardized mass contract utilized by a monopoly and which, as our supreme court has observed, does not result

from the "play of the market." *Weaver v. American Oil* (1971), 257 Ind. 458, 463, 276 N.E.2d 144, 147.

■ API also challenges our opinion for taking "judicial notice of matters outside the record without saying it was doing so." Brief of Appellee on Rehearing at 6. Pursuant to Evidence Rule 201, "[a] court may take judicial notice of a fact" which is "not subject to reasonable dispute," and "may take judicial notice, whether requested or not ... at any stage of the proceeding." However, "a party is entitled ... to an opportunity to be heard as to the propriety of taking judicial notice." API complains that in our decision we "took judicial notice of matters outside the record" on which it was "never given an opportunity to be heard." Brief of Appellee on Rehearing at 6–7.

■ This court should exercise extreme caution in taking judicial notice of facts subject to proof. *Ritz v. Indiana and Ohio R.R., Inc.* (1994), Ind.App., 632 N.E.2d 769, 775. At the same time, not every circumstance related to the case presents a fact requiring evidentiary proof or judicial notice. Here, implicit in our holding was an awareness that in our society the telephone is ubiquitous and is the primary means of remote interactive communication. Such an awareness comes from life's experience, which forms the background and frame of reference for every judicial opinion. *See Belcher v. Buesking* (1978), 175 Ind.App. 322, 326–27, 371 N.E.2d 417, 420 (quite apart from strict judicial notice, "the method of judicial reasoning cannot be hermetically sealed and shorn of common sense and ordinary experience."); *accord Blickenstaff v. Blickenstaff* (1989), Ind.App., 539 N.E.2d 41, 44 (quoting *Belcher* and holding it was appropriate for court to use its "everyday knowledge of facts in general."). Thus, those circumstances which merely place the legal issue before the court in context are not adjudicative facts that require a hearing.

■ We did not take judicial notice of matters outside the record. Our opinion was based on API's claims and on other undisputed facts in the record material to the question presented. *See* Ind.Trial Rule 56(C). In reviewing a summary judgment, even though there may be conflicting facts and

inferences regarding certain elements of the claim, we are only concerned with the dispositive or essential facts, and inferences to be drawn therefrom. *Citizens Nat. Bank v. Indianapolis Auto Auction* (1992), Ind.App., 592 N.E.2d 1256, 1257. Here, there were no questions of material fact which required a remand to the trial court.

We are mindful that the Indiana Supreme Court has recently reaffirmed the "traditional precaution against the reckless use of public policy as a means for invalidating contracts." *Straub v. Todd* (1994), Ind., 645 N.E.2d 597, 599 n. 3. With that admonition in mind, we reaffirm our opinion that, as a constant and universal source of reference tied to telephone service, the API Yellow Pages directory is a " 'practical necessity for ... members of the public,' " including *both* buyers and sellers. *Pigman,* 641 N.E.2d at 1030 (quoting *General Bargain Center v. American Alarm Co.* (1982), Ind.App., 430 N.E.2d 407, 411–12). Thus, API's advertising contract affects the public interest, and its exculpatory clause is unconscionable.[1]

The petition for rehearing is denied.

ROBERTSON and STATON, JJ., concur.

---

1. Recently, in *Pinnacle Computer Services, Inc. v. Ameritech Publishing, Inc.* (1994), Ind.App., 642 N.E.2d 1011, a divided panel of this court concluded that, "[t]he publication of the Yellow Pages in a telephone directory is wholly a matter of private concern." *Id.* at 1018. On that basic premise we disagree with the majority in *Pinnacle.*