FEDERAL KEMPER INSURANCE COMPANY, Appellant–Plaintiff,

v.

Carl W. BROWN, Jackie Galloway, Virgil Robinson, and Estate of Leonard Walker, Appellees–Defendants,

and

Westfield Insurance Company, Intervenor.

No. 18A02–9604–CV–191.

Court of Appeals of Indiana.

Jan. 15, 1997.

Rehearing Denied March 6, 1997.

Mark D. Gerth, Kightlinger & Gray, Indianapolis, for Appellant–Plaintiff.

P. Gregory Cross, Cross, Marshall, Schuck, DeWeese, Cross & Feick, Muncie, Jeffrey L. Arnold, Diane M. Frye, McClellan, McClellan & Arnold, Muncie, for Appellees–Defendants.

## OPINION

ROBERTSON, Judge.

Plaintiff–Appellant Federal Kemper Insurance Company [Kemper] initiated the present lawsuit asserting that it was entitled, as a matter of law, to rescind an automobile liability policy issued to Appellee Carl W. Brown, and also to avoid liability under the policy to innocent third-party accident victims, Appellees Virgil V. Robinson and the Estate of Leonard Walker. We agree, and therefore, reverse and remand with instructions that judgment be entered in favor of Kemper.

## FACTS

The facts in the light most favorable to the appellees reveal that in March of 1992, Brown spoke to an insurance agent about obtaining automobile liability insurance for a Chevrolet Cavalier for which his stepson, who lived with Brown, would be the principal driver. Brown needed to obtain a new insurance policy for the car because the insurance company which had insured the stepson planned to cancel the stepson's insurance due his driving record. Brown informed the insurance agent that the stepson had accumulated more than one speeding ticket in the previous five years. The agent told Brown that insurance on the stepson alone would cost more than $1,000.00 per year.

However, in order to save Brown money, the agent filled out an application for insurance which misrepresented that Brown's wife was the only other person in Brown's household over the age of twelve and that no operator of the Cavalier had any moving violations or had had his or her license suspended within the previous five years.[1] The application contained the following verification:

> For all applicants: I certify that all statements on this application are true and correct and that they are offered as an inducement to the Company to issue the policy for which I am applying.

Brown signed the application without reading it, having relied on the agent to fill it out correctly.

Kemper issued Brown an automobile liability policy for the Cavalier based on the false application. It is not disputed that Kemper would not have issued the policy had it known that the stepson was the principal driver of the Cavalier.

The stepson did live with Brown, was the principal driver of the Cavalier, and had accumulated speeding tickets within the previous five years. In fact, the stepson's driver's license had been suspended on more than one occasion. In April of 1993, the stepson, driving the Cavalier, was involved in an automobile accident with a car driven by Virgil V. Robinson in which Leonard Walker was a passenger. Robinson suffered serious personal injuries, and Walker suffered fatal injuries in the accident.

Robinson was covered under an automobile liability insurance policy issued by Appellee Westfield Insurance Company [Westfield] that had uninsured/underinsured motorist coverage. Westfield paid Robinson $25,000.00 and sought subrogation of Robinson's rights under the Kemper policy. Westfield also expects that it may be required to pay sums to Walker's Estate under Robinson's policy.

Kemper denied coverage under Brown's automobile liability policy based upon the fraudulent application and brought the present action against Brown, the stepson, Robinson, and Walker's estate seeking rescission of the policy. Westfield was permitted to intervene in the action. The trial court enter-

---

1. The insurance agent who took Brown's application denies that he told her anything about the stepson or that she had any knowledge that the application was false.

tained cross-motions for summary judgment. The trial court denied Kemper's motion for summary judgment finding that a genuine issue of material fact existed with respect to whether Brown could be charged with making a fraudulent application for insurance.[2] The trial court entered summary judgment in favor of Westfield, Robinson, and the Estate of Walker finding that, regardless of any fraud on Brown's part, Kemper could not avoid liability to third parties under *American Underwriters Group, Inc. v. Williamson*, 496 N.E.2d 807 (Ind.Ct.App.1986).

This appeal ensued. Additional facts are supplied as necessary.

## DECISION

■ We begin our analysis by noting that our supreme court has recently expressed its commitment to advancing the public policy in favor of enforcing contracts. *See Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind. 1995). Indiana courts recognize that it is in the best interest of the public not to unnecessarily restrict persons' freedom to contract. *Id.* Thus, as a general rule, the law allows persons of full age and competent understanding the utmost liberty in contracting; and their contracts, when entered into freely and voluntarily, will be enforced by the courts. *Pigman v. Ameritech Publishing Company*, 641 N.E.2d 1026, 1029 (Ind.Ct. App.1994); *reh'g denied*, 650 N.E.2d 67. Accordingly, Indiana has long adhered to the rule that contracting parties may enter into any agreement they desire so long as it is not illegal or contrary to public policy. *Id.* at 1030.

As stated in *Motorists Mutual Insurance Co. v. Morris*, 654 N.E.2d 861 (Ind.Ct.App. 1995):

Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. On the review of summary judgment proceedings where there is no factual dispute, we determine whether the trial court correctly applied the law. When the evidence is undisputed,

as in the case at bar, and there are no unresolved facts to be determined, it is appropriate for the appellate court to determine as a matter of law that summary judgment was rendered for the wrong party.

*Id.* at 862 (Citations omitted). Summary judgment is appropriate when there is no dispute or conflict regarding facts which are dispositive of the litigation. *Madison County Bank & Trust Co. v. Kreegar*, 514 N.E.2d 279, 281 (Ind.1987).

## I.

### *Whether Brown is Chargeable with Fraud*

Kemper first argues that the trial court erred in denying its motion for summary judgment based upon the alleged fraud of the insurance agent and Brown. Brown insists that, because he had disclosed all material information to the insurance agent, he cannot be charged with the agent's fraud in obtaining insurance from Kemper. He insists that he signed the application without reading it and without knowledge that it contained misrepresentations.

■ Generally, the law imputes an agent's knowledge, acquired while the agent was acting within the scope of his agency, to the principal, even if the principal does not actually know what the agent knows. *Stump v. Indiana Equipment Co., Inc.*, 601 N.E.2d 398, 403 (Ind.Ct.App.1992), *trans. denied.* When an agent authorized to solicit and take applications for insurance fraudulently inserts false answers without the knowledge of the applicant, the insurance company must suffer the loss, and not the insured, *who is without fault. Phoenix Insurance Co. v. Stark*, 120 Ind. 444, 22 N.E. 413, 414 (1889); *Pickels v. Phoenix Insurance Co.*, 119 Ind. 291, 21 N.E. 898, 900 (1889) (Where the misstatement *was not authorized by the applicant for insurance*, the wrong should be imputed to the company). Knowledge will not be imputed to the principal in cases where the agent colludes with the person who claims the benefit of the principal's

---

**2.** Trial court findings in summary judgment proceedings merely afford the reviewing court a statement of reasons for the trial court's actions

and serve no other purpose. *Dague v. Fort Wayne Newspapers, Inc.*, 647 N.E.2d 1138, 1140 (Ind.Ct.App.1995), *trans. denied.*

knowledge in a fraudulent scheme to defraud the principal. *Vincennes Savings & Loan Association v. St. John*, 213 Ind. 171, 12 N.E.2d 127, 130 (1938).

Another 1938 decision by our supreme court contains the most recent expression of the law applicable to this case. In *Metropolitan Life Insurance Co. v. Alterovitz*, 214 Ind. 186, 14 N.E.2d 570 (1938), the insured claimed ignorance of the falsity of answers on an application of insurance, which had been supplied by the insurance company's medical examiner, asserting that the applicant had signed the application without reading it and without knowledge of the misrepresentations. 14 N.E.2d at 575. The *Alterovitz* court stated:

'There is no reason, in contracts of insurance, that a party should be, by law, relieved from the duty of exercising the same ordinary care and prudence that is required from the duty of exercising the same ordinary care and prudence that is required in every other business transaction. It is the duty of every man to read what he signs. His failure to do so will or should not relieve him or allow him to avoid the contract. This seems to us to be a sound statement of law and especially in view of the fact that in the instant case the appellee under his own signature stated that the answers to the questions in the application were correctly written as given by the applicant and were full, true, and complete. It is at once apparent that in any ordinary contract the appellee would be bound by such a statement and we see no sound reason why the same rule should not apply in the instant case although it is a contract of insurance.'

*Id.* at 574–575 (Citations omitted). Accordingly, the *Alterovitz* court adopted the following rule:

'In the case at bar, when the agent was taking the application of the assured and was explaining the questions and the meaning of the terms used, he was very properly to be regarded for those purposes, as the representative of the company; but, if the evidence offered by the plaintiff is true, the agent must have attempted to commit a deliberate fraud upon the company. He knew that if correct answers were given to the questions, the applicant would not be considered a fit subject for insurance, and no policy would be issued. It was his duty not only to write down truly the answers given by the applicant, but also to make known to his principal any other facts material to the risk which might come to his knowledge. Therefore, if he was guilty of any such conduct as the offer of the plaintiff would tend to prove, he grossly violated his duty, and the effect of his action was to benefit the applicant at the expense of the company. But, in perpetrating such a fraud, the agent would not be alone. *The signing of the application made the assured a party to it, and, when she signed it, she was bound to know what she was doing.* Good faith required of her correct answers to the questions, and reasonable diligence to see that the answers were correctly written. If it be assumed that the answers were falsified, as alleged, that fact would at once appear, when the policy was delivered to her by a copy of the application attached to it. Inspection would have shown that a fraud had been committed, both upon her and the company, and it would have been her plain duty to make the fact known to the company. She had it within her power to prevent the fraud, as knowledge of it was within her reach. Neither she nor her beneficiary can be permitted to take the fruits of the misrepresentation.'

14 N.E.2d at 575 (Quoting *Rinker v. Aetna Life Insurance Company*, 214 Pa. 608, 64 A. 82, 84 (1906)) (Emphasis added). The *Alterovitz* court held that the applicant, who had signed the application containing material misrepresentations, was chargeable with the knowledge of the false statements and must be held to have adopted them as his own. 14 N.E.2d at 577.[3]

---

3. Brown asserts that the *Alterovitz* holding is limited to life insurance policies where a statute (now codified as Ind.Code 27–1–12–6(a)(3)) requires that a copy of the application be physically attached to the policy of insurance so that when the policy is returned to applicant, he has the opportunity to inspect the application and report any errors made in the application to the insur-

Despite a conflict in facts and inferences on some elements of a claim, summary judgment may be proper when no dispute exists with regard to the facts which are dispositive of the litigation. *Flosenzier v. John Glenn Education Association*, 656 N.E.2d 864, 866 (Ind.Ct.App.1995), *trans. denied*. In the present case, Brown knew that obtaining automobile liability insurance for his stepson would be difficult and/or expensive. Brown met with the insurance agent involved in the present case because the insurance company which had insured the stepson had given notice that it would cancel his existing liability policy due to the stepson's driving record. The Kemper agent informed Brown that insurance on the stepson alone would cost over $1,000.00 per year. Nevertheless, the agent obtained insurance for Brown from Kemper on the Cavalier driven by the stepson at a lower premium by misrepresenting on the application that there were no drivers in Brown's household other than Brown and his wife. Brown then signed the application certifying that the information contained therein was true and correct. Most importantly, Brown signed the application that omitted his stepson as a principal driver, knowing that the stepson was, in fact, the principal driver of the Cavalier.

While some facts underlying the transaction between Brown and the insurance agent are disputed, facts dispositive of the litigation are not. Brown's asserted disclosures to the agent simply cannot be reconciled with the contents of the application he signed. Under the authority of *Alterovitz*, 14 N.E.2d at 575, Brown is chargeable with the fraud which induced Kemper to issue the insurance policy despite Brown's claim of good faith. To hold otherwise would be to ignore totally and render meaningless Brown's signature certifying the contents of the application as true and correct.

Generally, a policy of insurance is voidable at the insurance company's option where the insured misrepresents a fact material to the risk. *Motorists*, 654 N.E.2d at 862. Where the applicant's misrepresentation at the time of the application could reasonably influence the insurer in deciding whether or not it should reject or accept the risk, the policy of insurance is voidable at the insurance company's option. *Id.*

As Brown is chargeable with the misrepresentation of facts material to the risk, Kemper may avoid liability on the policy, at least with respect to Brown and his stepson. Therefore, the trial court erred in denying Kemper's motion for summary judgment on this issue.

## II.

### *Effect of Brown's Fraud with Respect to Robinson and Walker's Estate*

Indiana's Financial Responsibility Act, Ind.Code 9–25, compels motorists to make provisions for the protection of other drivers on the road in order that persons who suffer loss due to the tragedy of automobile accidents shall have a source and means of recovery. *Motorists*, 654 N.E.2d at 862. The minimum amounts of financial responsibility that drivers must provide are:

(1) ... twenty-five thousand dollars ($25,000) for bodily injury to or the death of one (1) individual.

(2) Fifty thousand dollars ($50,000) for bodily injury to or the death of two (2) or more individuals in any one (1) accident.

(3) Ten thousand dollars ($10,000) for damage to or the destruction of property in one (1) accident.

I.C. 9–25–4–5. Based upon this public policy, we have held that an insurance company may not rescind a policy of insurance on the ground of fraud or misrepresentation in procuring the insurance policy so as to escape liability to third persons. *Williamson*, 496 N.E.2d at 810–811.

---

ance company. This is a distinction without a difference. The *Alterovitz* court held that, before the enactment of the statute, the applicant had no opportunity to read over an application to ascertain whether or not the answers were truthfully recorded therein. 14 N.E.2d at 574. In the present case, Brown does not assert (nor could he reasonably assert) that he did not have the opportunity to review the insurance application before he signed it certifying that the answers contained therein were true.

However, the public policy advanced by the Financial Responsibility Act has been complemented and bolstered by the requirement under I.C. 27–7–5–2 that insurance companies offer uninsured/underinsured motorist coverage. *Motorists*, 654 N.E.2d at 863. Uninsured/underinsured coverage must be offered in the same minimum amounts as prescribed by the Financial Responsibility Act under I.C. 9–25–4–5 as set out above. I.C. 27–7–5–2(a)(1).

In *Motorists*, we held that where the public policy advanced by the Financial Responsibility Act and the statute requiring insurance companies to offer uninsured/underinsurance motorist coverage had been fulfilled by the third party's purchase of uninsured/underinsurance coverage, an insurance company could properly rescind an automobile liability policy obtained through fraud. 654 N.E.2d at 863. We noted that a motorist who had procured a liability policy through fraud was, in effect, an uninsured motorist, the precise risk insured under uninsured/underinsured motorist coverage. *Id.* Thus, we held that the loss should properly fall upon the insurance company which had issued the uninsured motorist coverage (who had been compensated for that risk) rather than the insurance company who had been fraudulently induced to issue liability coverage (who had not been compensated for that risk). *Id.*

Robinson and the Estate of Walker distinguish *Motorists* by pointing out that the loss involved in *Motorists* was approximately $14,000.00, an amount below the minimum coverage required by financial responsibility statutory scheme, and thus, the injured third parties were, in all likelihood, fully compensated by the uninsured/underinsured motorists coverage. Robinson and the Estate argue that, if they are confined to the lower policy limits of Robinson's uninsured motorist coverage, and are not permitted to access

the higher policy limits provided by Brown's liability coverage, then they will be under compensated for their losses contrary to the public policy in favor of compensating accident victims. Robinson and the Estate's point is well-taken. However, we disagree that this distinction requires a different result than the one reached in *Motorists*.

Although Indiana is a compulsory financial responsibility state, accident victims are not guaranteed compensation in every automobile accident. *Motorists*, 654 N.E.2d at 862. Moreover, Indiana's Financial Responsibility Act attempts to assure no more than the availability of the statutory minimum amount of coverage. *Safeco Insurance Company of America v. State Farm Mutual Automobile Insurance*, 555 N.E.2d 523, 524–25 (Ind.Ct.App.1990), *trans. denied; Pekin Insurance Co. v. Super*, 912 F.Supp. 409 (S.D.Ind.1995). The *Pekin* court held that:

> ... the Indiana Supreme Court would hold, unlike *Williamson* [496 N.E.2d 807], that an insurer whose insured obtained their policy by fraud is liable to an injured third party for the amount required by the Financial Responsibility Act, but that under the freedom of contract an insurer can raise the defense of material misrepresentation as to insurance over and above that amount.

912 F.Supp. at 412.[4] We agree with the *Pekin* court that, because Indiana's Financial Responsibility Act assures that no more than the statutory minimum coverage be available to compensate accident victims, a defrauded insurance company liable to innocent third parties under *Williamson* should be entitled to partially rescind its liability coverage to the minimum amounts required under the Act. Accordingly, innocent third parties in the position of Robinson and the Estate cannot access the higher limits that may have been available under a liability policy as writ-

---

**4.** The *Williamson,* court expressly declined to decide whether the defrauded insurance company was entitled to partially rescind the liability coverage. 496 N.E.2d at 811 n. 4. The *Pekin* court declined to follow *Motorists* on the basis that *Motorists* "[ignores the public policy], as expressed by the Financial Responsibility Act, [that] auto accident victims' primary means of recovery be from liability insurance." 912

F.Supp. at 412–13. The *Pekin* court is mistaken because *Motorists* did not ignore this important public policy. *Motorists* upheld the longstanding principle of contract law (and thus the policy in favor of the freedom of contract) that liability insurance coverage procured through fraud may properly be rescinded ab initio and thus is not available to compensate victims. 654 N.E.2d at 863.

ten. Moreover, precisely because the Financial Responsibility Act assures that no more than the statutory minimum amounts of compensation be available to injured victims, the Act cannot be construed to provide a means by which accident victims can obtain sums in excess of those amounts by requiring an insurance company, who was fraudulently induced to issue liability insurance, to provide compensation where uninsured/underinsured coverage has satisfied the purpose of the Act by making the statutory minimum amounts available to the victims. The purpose of uninsured/underinsured motorist coverage is to put the injured party in the position he would have been had the other person complied with the Act, not in a better position. *Motorists,* 654 N.E.2d at 863.

■ Thus, *Motorists* controls the disposition of the present case. Brown obtained automobile liability insurance from Kemper through fraud. Thus, in effect, he had no liability insurance and had not complied with the Financial Responsibility Act. *See id.* Nevertheless, the principal purpose of the Act, that accident victims be provided with a source and means of recovery for their losses up to the statutory minimum amounts, has been fulfilled by Robinson's purchase of uninsured/underinsured coverage from Westfield. Therefore, Kemper may avoid liability under the policy with respect to the claims of Westfield, Robinson, and the Estate of Walker as well.

## CONCLUSION

We reverse the summary judgment rulings entered by the trial court and remand with instructions that judgment be entered in favor of Kemper.

Judgment reversed.

NAJAM, J., concurs.

SULLIVAN, J., dissents with separate opinion.

## DISSENTING OPINION

SULLIVAN, Judge.

There are clear-cut genuine issues of material fact in this case. More particularly, whether Brown told Jill Long, the insurance agent who filled out the application, that Brown's step-son, Jackie Galloway, was a resident in his household and would be the primary driver of the Chevrolet Cavalier, whether Galloway had some past speeding tickets, and whether Long told Brown that it would cost $1000 per year to insure Galloway, are subjects of direct and unmistakable dispute. According to Long's deposition and another taped statement she denied any such conversations and categorically maintained that she did not know of Jackie Galloway's existence relative to Brown or to any of the vehicles until after the accident had occurred. In this regard, therefore, it is appropriate to consider the facts most favorably to the appellees, as does the majority opinion, only with regard to denial of Kemper's Motion for Summary Judgment.[5]

In this regard, the trial court may have been partially correct in stating that if Long did have knowledge of Jackie Galloway's prospective operation of the Cavalier and if she nevertheless did not include that information upon the application, Kemper would be precluded from rescinding the insurance contract. Such result would be premised upon the principle that an insurer is bound by the misrepresentations of the insurer's agent so long as the applicant did not have knowledge of the misrepresentations, gave truthful information and did not mislead the agent. See *The Phoenix Insurance Co. of Brooklyn v. Stark* (1889) 120 Ind. 444, 22 N.E. 413; *Pickel v. The Phoenix Insurance Co. of Brooklyn* (1889) 119 Ind. 291, 21 N.E. 898; *Metropolitan Life Insurance Co. v. Wathen* (1919) 71 Ind.App. 145, 124 N.E. 403.

Here, however, as noted, these maters are in genuine dispute. For purposes of summary judgment, it cannot be assumed either that Brown made full disclosure to Long and

5. The record reflects that summary judgment was only entered with regard to Kemper's complaint for rescission of the insurance contract. There are other issues remaining between and among all the litigants, but such matters are not the subject of this appeal. Such matters may be the focus of some discussion hereinafter, to the extent that they bear upon the extent of liability of the respective insurance providers.

that she misrepresented the facts on the application. Neither can it be assumed that Brown did not make such disclosure. Therefore, the summary judgment motion of Kemper should not have been granted, nor should the court have granted such judgment in favor of appellees without limiting the extent of that judgment. The trial court apparently entered judgment for the appellees upon Kemper's complaint reasoning that notwithstanding a fraud perpetrated by Brown, Kemper, under *American Underwriters Group v. Williamson* (1986) Ind.App., 496 N.E.2d 807, could not rescind the insurance coverage.

In this regard, I agree in part with the majority. Brown admitted that he signed the application containing the misrepresentations. Therefore, without regard to Long's knowledge, or lack thereof, Brown is held to the knowledge that the application contained material misrepresentations. He was therefore not without fault so as to bring into play those cases, above noted, which prevent rescission if the insurer's agent made the material misrepresentations. On this basis, therefore, as to Part I of the majority opinion, I agree that because of Brown's misrepresentations the policy was subject to rescission—but only *partial* rescission.

As to Part II, however, I am unable to agree with the conclusion that because in this case there was uninsured insurance protection available to Robinson and to Walker's estate through Westfield, Kemper may totally avoid any insurance responsibility and may avoid the still viable aspects of *American Underwriters Group, Inc. v. Williamson* (1986) Ind.App., 496 N.E.2d 807. That case clearly states that an insurer may not avoid liability to an injured third party on grounds of fraud or misrepresentation by the insured. *Motorists Mutual Insurance Co. v. Morris* (1995) Ind.App., 654 N.E.2d 861, heavily relied upon by the majority here, mistakenly, I believe, justified rescission for a misrepresentation by the insured not only because the injured party had received uninsured motorist insurance payment, but also because the dispute was "between insurance companies who are not entitled to protection under [the Financial Responsibility Act and the uninsured/underinsured insurance statute]." 654 N.E.2d at 863.

In this latter regard, the majority loses sight of the principle that in subrogation matters such as here involved, the subrogated insurance carrier succeeds to all the rights and claims held by the injured party as against the tort-feasor. *See* I.C. 27–7–5– 6; *American States Ins. Co. v. Williams* (1972) 151 Ind.App. 99, 278 N.E.2d 295. To the extent that Robinson and Walker's estate have a valid claim against Brown's insurer for the negligence of Galloway, Westfield Insurance Co. is conditionally subrogated. Furthermore, *Williamson, supra,* 496 N.E.2d 807, would seem to preclude Kemper from avoiding total liability even with regard to a subrogation claim made by another insurer. To allow Kemper to avoid any and all liability is to permit it to take refuge behind the insurance coverage provided by the uninsured/underinsured provision. The fact that the particular dispute here appears to be, for the most part, between two insurance companies should not alter the effect of Kemper's attempt to rescind the insurance contract *in toto.* If under a hypothetical situation in which Westfield had offered the uninsured coverage but it had been specifically rejected by Robinson, under I.C. 27–7–5–2, Kemper would be liable to Robinson in the amount of $25,000, the statutory amount provided in the Financial Responsibility Act. Kemper's liability should not be diminished by any uninsured/underinsured motorist payments made. In this regard, I respectfully disagree with the overly broad sweep of *Motorists Mutual Ins. Co., supra,* 654 N.E.2d 861.

In the final analysis, Kemper should be permitted to rescind only with regard to the liability policy coverage in excess of $25,000 as to Robinson.[6] However, Westfield under

---

6. Because no uninsured motorist payments have yet been made to Walker's estate, I discuss only the effect of my views as to Robinson. Clearly, however, under my approach, Kemper would also be responsible to Walker's estate up to a maximum of $25,000 for a total maximum liability of $50,000. Conversely, Westfield, if having made uninsured or underinsured motorist payments to Walker's estate, could be subrogated

the facts of this case will not be able to successfully prosecute its subrogation claim against Kemper, unless the $25,000 due to the injured party from Kemper and the $25,-000 already paid by Westfield to Robinson, exceed the amount of Robinson's damages. *Capps v. Klebs* (1978) 178 Ind.App. 293, 382 N.E.2d 947.[7]

I would affirm the denial of Kemper's Motion for Summary judgment and would remand with instructions to determine the damages sustained by Robinson and Walker's estate and only thereafter hold Kemper liable to the extent of $25,000 and to determine whether any excess is recoverable by Westfield either from Kemper or from Robinson or Walker's estate.

---

only if the total payments to Walker's estate exceeded the amount of damages proved.

7. Because I would hold Kemper liable to Robinson to the extent of $25,000 the Westfield

payment or payments would perhaps be more accurately classified as underinsured motorist payments rather than as payments under the uninsured motorist coverage.