VINCENNES SAVINGS AND LOAN ASSOCIATION *v.*
ST. JOHN ET AL.

[No. 26,950. Filed January 11, 1938.]

*Lewis & Lewis, Charles E. Henderson* and *Laurens L. Henderson,* for appellant.

*Charles E. Daugherty, Milton J. Fegan* and *Kessinger, Hill & Arterburn,* for appellees.

FANSLER, J.—Katherine T. Sanneman was in her lifetime the owner of certain real estate. She executed a first mortgage to secure a note for $5,000, in favor of William M. Alsop, and afterwards a second mortgage to the same person to secure two notes, one for $1,000 and one for $1,200. The mortgages were recorded. William M. Alsop was the legal and financial adviser of appellee Angie S. St. John. He sold the $5,000 note, secured by the first mortgage above described, and the $1,000 note, secured by the second mortgage, to Mrs. St. John, and indorsed the notes and delivered them to her. The mortgages were not assigned or transferred, but were recorded and remained in the name of William M. Alsop. Mrs. St. John testified that, at the time she bought the notes from Mr. Alsop, she believed he was a man of considerable means and property, and relied upon his indorsement of the notes as well as upon the mortgages; that she relied upon his honesty and ability to pay; and that she relied upon him to collect the notes in question. This was but one of a number of like transactions, and, at the time of Mr. Alsop's death, she had about $60,000 of notes which she had purchased from him under like circumstances. She had been transact-

ing business with him in this manner since 1918. From time to time, Mr. Alsop collected interest and paid it to her, and he had collected $500 upon the principal of the $1,000 note and paid it to her. Mrs. Sanneman died, and appellee Frank J. Primus, Jr., was appointed administrator of her estate. William M. Alsop became the attorney for the administrator. The administrator filed a petition to sell the property covered by the mortgages to pay debts, and prayed that it be ordered sold free and discharged of the lien of the mortgages; the lien to attach to the fund. William M. Alsop appeared to the petition, asserted an interest in the real estate, and that he was the owner and holder of the two mortgages in question. The real estate was ordered sold, free and discharged of the lien of the mortgages, at private sale, for not less than the appraised value. It was appraised at $7,500. It was thereafter reported sold to T. Ralph Alsop, who was the son of William M. Alsop, and then a student in college, for $7,300. No money was ever paid to the administrator. William M. Alsop was also the president, the managing officer, and the attorney for appellant Vincennes Saving and Loan Association. T. Ralph Alsop executed a mortgage upon the property in question in favor of appellant, in the sum of $5,000. No money was ever paid to anyone on account of this mortgage, with the exception of $2,500, made up of $9 advanced for expenses and a check for $2,491 made to T. Ralph Alsop. The check was indorsed by T. Ralph Alsop and deposited to the credit of William M. Alsop. William M. Alsop shortly thereafter died. None of appellant's officers or employees knew anything about this transaction, except William M. Alsop, and he alone acted for appellant as its agent, attorney, and chief executive officer. Appellee Angie S. St. John thereafter began this action, seeking to have the sale of the real estate by the administrator declared null and void, the

deed set aside, the mortgage to appellant declared null and void, and the property resold. The contention that the sale is null and void is based upon allegations that the property was sold at private sale for $7,300, and that it was appraised at $7,500. Various other irregularities in the sale proceedings are asserted. The administration of the estate of Mrs. Sanneman is still pending, and the estate is insolvent. There was a judgment that the plaintiff was the owner of the $5,000 and the $1,000 notes referred to; that the notes are an equitable lien upon the real estate; that the sale was null and void, and that it be set aside; that the mortgage executed by T. Ralph Alsop and the note secured thereby, in favor of appellant, were executed without any consideration by him; and that they are null and void, and not a lien on the real estate. The order book entries pertaining to the sale were ordered set aside, and the administrator was ordered to proceed with the settlement of the estate.

Error is assigned upon the overruling of a demurrer to the complaint, and upon the overruling of a motion for a new trial.

It is clear from the undisputed facts that Mrs. St. John intentionally and knowingly left it within the power of William M. Alsop to release the mortgages which secured the notes in question. She looked for security and payment, both to the mortgagors, and to Alsop as an indorser of the notes. Alsop, himself, held one note, which was secured by the second mortgage, in his own right. There was nothing on the records to disclose that any person but Alsop had an interest in the lien of the mortgages. Anyone examining the records had a right to rely upon the information there disclosed, and treat Alsop as having full power in his own name to release the mortgages and discharge the property of the lien. In so far as Mrs.

St. John's notes were protected by the lien of the mortgages, Alsop held them in trust for her. But it was a trust undisclosed to the public, and she voluntarily permitted it to remain secret and undisclosed. She knew of the death of Mrs. Sanneman, and is chargeable with knowledge that her estate was being administered. She talked with Mr. Alsop about collecting the notes, and he told her that the Sannemans were hoping to collect damages for the negligent act of a railroad in causing her death, and expected to pay the notes out of the proceeds. She did not notify the Sannemans or the administrator of her claim against the estate, or her interest in the mortgages, or take any steps to collect in her own name, or to cause the record to show that she had an interest in the mortgages. The court order shows that the sale of the real estate was authorized by a court having jurisdiction of the parties and the subject-matter; that the administrator gave bond; that notice of the sale was given as provided by law; that the premises were sold accordingly to T. Ralph Alsop. All of the heirs and lienholders of record were in court by proper notice.

It is contended by Mrs. St. John that the sale was invalid and voidable because the property sold for less than the appraised value. Section 6-1148 Burns' Ann. St. 1933, §3181 Baldwin's Ind. St. 1934, provides:

"No sale of any real estate, made by an executor, administrator, or guardian, shall be avoided on account of any irregularity or defect in the proceedings, if it shall appear:

"First. That the sale was authorized by the court having jurisdiction of the parties and the subject-matter.

"Second. That the executor, administrator, or guar-

dian gave bond, as required by law, or has accounted for the proceeds of such sale.

"Third. That notice of the time and place of sale was given in the manner provided by law.

"Fourth. That the premises were sold accordingly, and are held by or under one who purchased them in good faith."

The heirs are not complaining of the irregularity and the sale for less than the appraised value, and it would seem that, under the statute above quoted, the sale might not be set aside or avoided on that ground. Mrs. St. John was not harmed by the sale at less than the appraisal, but was benefited, as will hereafter appear. The remedy of a party to the proceeding was to object, and not stand by and permit the sale to be approved. It is true that the administrator testified that he did not remember signing the petition for sale, or the bond, or the report, but the record of the probate court in which he was appearing, and of which he was charged with knowledge, recites that he did file a petition, and give bond, and notice, and report the sale; and no party who was in court, with notice of the proceeding, and who permitted the record to be so made without objection, may dispute the record as against an innocent holder of an interest in the property for value. And Mrs. St. John, who had an equitable interest in the property, by permitting the mortgages to remain of record in the name of Mr. Alsop, permitted the record to be made, on the face of which it appears that all lienholders and heirs were in court, and that the sale was made under conditions which would not permit of its being avoided under the statute. Equity aids the vigilant. Since she permitted the public record, maintained for the purpose of disclosing the ownership of liens, to show that the mortgages belonged to Alsop, she is not in a position to complain against one who

parted with a consideration for an interest in the property.

Appellee urges upon our attention *Fisher et al.* v. *Bush* (1892), 133 Ind. 315, 32 N. E. 924. In that case, O'Brien and Graham, a firm of attorneys, represented the administrator in obtaining an order for the sale of real estate. The Christian name of the Graham of the firm did not appear on the record. There was a sale to Robert Graham. Robert Graham then conveyed the land to the administrator, who afterwards conveyed to the appellant Fisher. No consideration was paid by Graham to the administrator. The court said that the information contained in the record was such as to put Fisher upon inquiry; that, since the record disclosed that a Graham was an attorney for the administrator, and that the purchaser was Robert Graham, a clue was furnished, an investigation of which would have disclosed that the attorney and the purchaser were the same person. While it is not referred to by the court in the discussion of the reasons for its decision, it is apparent from the opinion that Graham immediately deeded the land to the administrator, and that this was apparent from the record. It would seem clear that the fact that the land was sold by an administrator to any person who immediately deeded it back to the administrator would be sufficient notice to put the subsequent purchaser upon inquiry, and that a right result was reached, but we cannot approve the statement that the mere fact that the purchaser bore the same surname as one of the members of the firm who was acting for the administrator is sufficient in itself to charge an innocent purchaser with constructive knowledge of illegality in the sale.

In the case at bar it does not appear that any money was paid by Alsop to the administrator, but the payment of money would have been but an idle ceremony,

since, by the determination of the court, the lien of the mortgage was transferred to the fund, and Alsop was, upon the face of the records, entitled to receive all of the money. But, in any event, as has been pointed out, the heirs are not complaining. The amount found to have been due, and secured by the mortgage, was considerably in excess of the appraised value, and if the appraised value had been received it would not have gone to the heirs.

It is contended that, since William M. Alsop was the sole managing officer of appellant, and was its agent and attorney, it is chargeable with any knowledge that he had concerning the equities of Mrs. St. John. It is said in 21 R. C. L. p. 843, that: "While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that there is an exception to the construction or imputation of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the communication of such a fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating, or when the person claiming the benefit of the knowledge or notice or those whom he represents collude with the agent to cheat or defraud the principal. . . . Accordingly, if one in the course of his business as agent, attorney, or counsel for another obtains knowledge from which a trust would arise, and afterwards becomes the agent, attorney, or counsel of a subsequent purchaser in an independent and unconnected transaction, his previous knowledge is not notice to such other person for whom he acts." This statement of the law is abundantly supported by reason and authority. See *Fletcher, etc., Bank* v. *Crescent Paper Co.* (1923), 193 Ind. 329, 139 N. E. 664.

It cannot be doubted that Alsop held the mortgages in trust for Mrs. St. John, and that she permitted him to hold them in his own name with the trust undisclosed. She was bound to know that others might deal with him in respect to the property. She intended that he should have power to release the mortgages, and looked to him to account to her for collections. While there was no fraudulent collusion between Mrs. St. John and Alsop to defraud appellant, she put it within his power to use the mortgages as his own, and beyond the power of innocent persons dealing with him to discover by the ordinary means provided by law that he was not the owner of them.

There is a well established principle in equity that, where one of two innocent persons must suffer, he, who put it within the power of the third person to do the thing which results in the loss, must bear it.

T. Ralph Alsop merely acted for his father. He has no interest in the property to which he holds title. It has been noticed that, at the request of his father, Mr. Alsop executed a mortgage on the property to appellant for $5,000. Appellant paid no money whatever under this mortgage to anyone for some time, and until William M. Alsop, being confined to his home with an illness, from which he afterwards died, instructed his son to procure $2,500 from appellant under the mortgage and deposit it to his account. This was done before Mr. Alsop's death. There was due Mrs. St. John $5,500 principal, and perhaps some interest, on her notes, at the time the property was mortgaged. It is conceivable that, at the time the mortgage was made, Mr. Alsop intended to use the $5,000, and sufficient additional of his own funds, to pay Mrs. St. John's notes, and retain the property in his son's name to reimburse him for the note which he

held, which was also secured by one of the mortgages. This would have been exactly what Mrs. St. John expected of him. She looked to his indorsement and to his personal responsibility, as well as to the mortgages, as security, and he, as well as she, had a right to look to the mortgages as security.

T. Ralph Alsop must be treated as holding the property in question in trust, subject to the mortgage, for the benefit of Mrs. St. John, to the extent of the amount due upon her notes. Since all of the parties are before the court, the property may be sold upon her petition, subject to appellant's mortgage, and, if it does not produce a sufficient amount to pay the amount due her, she may be subrogated to the rights of the estate of William M. Alsop against the estate of Mrs. Sanneman, and have a claim against the estate of William M. Alsop until the deficiency is satisfied, although both estates are said to be badly insolvent.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

Shake, J., not participating.