**SAGAMORE PARK CENTRE AS-SOCIATES LIMITED PART-NERSHIP, Appellant,**

v.

**SAGAMORE PARK PROPERTIES, Debtor–Appellee.**

**Kenneth Meeker, United States Trustee.**

**No. 4:96cv001 AS.**

United States District Court, N.D. Indiana, Hammond Division.

Sept. 13, 1996.

John Huffaker, Gibson Ochnser and Adkins, Amarillo, TX, for appellant.

David A. Rosenthal, Rosenthal Greives and O'Bryan, Lafayette, IN, Fred Ringel, Robinson Brog Leinwand Reich Genovese and Gluck, New York City, for appellee.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Sagamore Park Centre Associates Limited Partnership ("Sagamore Associates") appeals from an order of the United States Bankruptcy Court sustaining the debtor's objection and disallowing Sagamore Associates' claim. The appellant specifically challenges the bankruptcy court's conclusion that Sagamore Park Properties ("the debtor"), is entitled to avoid Sagamore Associates' second mortgage on the subject property pursuant to § 544(a)(3) of the Bankruptcy Code ("the Code").

■ Although there is continuing action in the underlying bankruptcy court proceeding, this court has jurisdiction under 28 U.S.C. § 158(a) to hear Sagamore Associates' appeal. A bankruptcy order is considered "final" for purposes of § 158(a) when, as here, it "finally determines" one creditor's position. See In re Morse Elec. Co., Inc., 805 F.2d 262, 264–65 (7th Cir.1986).

### I. BACKGROUND

The debtor's sole asset in this Chapter 11 bankruptcy proceeding is a commercial property in West Lafayette, Indiana, known as the Sagamore Park Shopping Centre. The shopping center was originally developed by the appellant with financing from the Lincoln National Life Insurance Company ("Lincoln"), which took a first mortgage on the property as security for the loan. The mortgage was recorded in the Tippecanoe County recorder's office on September 13, 1983.

Sagamore Associates transferred the shopping center to the debtor by warranty deed in December 1983, in return for which the debtor gave the appellant a wraparound note [1] secured by a second mortgage on the property. This second mortgage, which was expressly subordinate to the first mortgage held by Lincoln, was recorded in the Tippecanoe County recorder's office on December 27, 1983. The note constituted a non-recourse obligation, meaning that, in the event of default, Sagamore Associates could seek recovery only from the mortgaged property and not through a debt judgment against the debtor.

Simultaneous with its transfer of the shopping center to the debtor, Sagamore Associates executed a collateral transfer of the debtor's note in favor of the First National Bank of Amarillo ("FNBA"), as further security for the appellant's own independent obligations to that bank. The collateral transfer of note, also recorded in Tippecanoe County on December 27, 1983, granted the bank an irrevocable power of attorney, as well as the authority to, *inter alia*, execute and deliver releases of all liens and security interests constituting a portion of the collateral.

Although Sagamore Associates had repaid its debt to FNBA prior to the September 1, 1993, maturity date of the wraparound note, FNBA initially failed to record a release of the appellant's collateral assignment. However, when a suit to foreclose a mechanic's lien on the property named Sagamore Associates and FNBA as defendants—the second lien still showed in the chain of title—FNBA executed a release of lien on October 25, 1993, which was recorded in the Tippecanoe County recorder's office on November 13, 1993. The validity, purpose, and effect of this release is the subject of the present appeal.

---

1. The wraparound note required the debtor, Sagamore Park Properties, to make its payments to the note holder, appellant Sagamore Park Centre Associates, which then made all required payments to the Lincoln National Life Insurance Company on the underlying note.

After the debtor failed to make the balloon payment due under the wraparound note on September 1, 1993, both the wraparound note and the underlying note were in default. The debtor filed its Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Indiana, Hammond Division at Lafayette, on February 25, 1994. Thereafter, Sagamore Associates filed a proof of secured claim in the amount of $5.7 million. The debtor's objection was submitted for trial before the bankruptcy court on May 9, 1995. Following the submission of post-trial briefs, the bankruptcy court disallowed Sagamore Associates' claim in its order of December 4, 1995. The appellant filed its timely notice of appeal on December 14, 1995, and this court heard oral argument on May 30, 1996.

## II. DISCUSSION

This appeal presents two issues for review: (1) whether the bankruptcy court erred in holding that the release of lien recorded on November 13, 1993, conferred "bona fide purchaser" status on the debtor pursuant to 11 U.S.C. § 544(a)(3); and (2) whether the bankruptcy court erred in refusing to admit opinion testimony at trial pursuant to Rules 702 and 704(a) of the Federal Rules of Evidence. Sagamore Associates asks the court to reinstate its claim for payment under the debtor's Chapter 11 plan or, in the alternative, to remand the matter for consideration of the opinion testimony excluded by the bankruptcy court.

### A. Standard of Review

A district court sitting as an appellate tribunal pursuant to 28 U.S.C. § 158(a) must accept the bankruptcy court's factual findings unless they are clearly erroneous. Fed. R.Bankr.P. 8013; *see In re Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1033 (7th Cir. 1993); *Calder v. Camp Grove State Bank*, 892 F.2d 629, 631 (7th Cir.1990). If the bankruptcy court's account of the evidence is plausible in view of the record in its entirety, the district court may not reverse even though convinced that as trier of fact it would have weighed the evidence differently. *In re Love*, 957 F.2d 1350, 1354 (7th Cir.

1992); *see Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

"A finding [of fact] is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994) (citations omitted) (alteration supplied). Mixed questions of law and fact are similarly reviewed for clear error when they involve fact-specific applications of law. *Williams v. Commissioner of Internal Revenue*, 1 F.3d 502, 505 (7th Cir.1993); *Schiro v. Clark*, 963 F.2d 962, 974 (7th Cir.1992), *aff'd sub nom. Schiro v. Farley*, 510 U.S. 222, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994); *United States v. Levy*, 955 F.2d 1098, 1103 n. 5 (7th Cir.), *cert. denied*, 506 U.S. 833, 113 S.Ct. 102, 121 L.Ed.2d 62 (1992).

By contrast, a bankruptcy court's conclusions of law are subject to *de novo* review by the district court. *In re Sheridan*, 57 F.3d 627, 633 (7th Cir.1995); *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir.1994); *Magill v. Newman (In re Newman)*, 903 F.2d 1150, 1152 (7th Cir.1990); *Calder*, 892 F.2d at 631. *De novo* review requires the district court to make an independent examination of the bankruptcy court's judgment without giving deference to that court's analysis or conclusions. *See Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984).

A district court reviews the bankruptcy court's evidentiary rulings for abuse of discretion. *See Hill v. Porter Memorial Hosp.*, 90 F.3d 220, 222 (7th Cir.1996); *Richardson v. Consolidated Rail Corp.*, 17 F.3d 213, 216 (7th Cir.1994). The district court must determine, therefore, not whether it would have ruled differently had it tried the case, but whether the bankruptcy judge's decisions were reasonable. *See Hill*, 90 F.3d at 222; *Antevski v. Volkswagenwerk Ak-*

*tiengesellschaft,* 4 F.3d 537, 540–41 (7th Cir. 1993).

## B. Release of Lien

■ It is undisputed that absent the release of lien recorded on November 13, 1993, Sagamore Associates' mortgage would constitute a second lien on the shopping center. The bankruptcy court found, however, that the release of lien discharged the second mortgage lien on the shopping center pursuant to 11 U.S.C. § 544(a)(3) and, due to the non-recourse nature of the wraparound note given to Sagamore Associates, deprived the appellant of even an unsecured claim.

■ Section 544(a)(3) of the Bankruptcy Code, the "strong arm clause," permits a Chapter 11 trustee [2] to avoid hypothetical transfers of property by the debtor, or obligations incurred by the debtor, that would be voidable under applicable state law by a bona fide purchaser of the property.[3] 11 U.S.C. § 544(a)(3) (1994). Put another way, the "strong arm" provision of § 544(a)(3) allows a trustee to pull back into the debtor's estate not only property actually *owned* by the debtor, but also property that the debtor could have *conveyed* under applicable state law. *Belisle v. Plunkett,* 877 F.2d 512, 516 (7th Cir.), *cert. denied sub nom. Belisle v. Anzivino,* 493 U.S. 893, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989). Thus, "[t]he statute mentions 'transfer' only in the sense of the *hypothetical* transfer that measures the trustee's rights: if a hypothetical bona fide transferee from the debtor would come ahead of the 'true' owner's rights, then the trustee takes ahead of the true owner." *Id.* at 515 (emphasis in original).

Appellant Sagamore Associates, the holder of the second mortgage, argues that the release of lien recorded by FNBA did not clear the title record of the mortgage and, thus, would not confer bona fide purchaser ("BFP") status under Indiana law. More precisely, the appellant claims that the release operated only as to its collateral transfer of the lien to FNBA; once Sagamore Associates fulfilled its independent obligations to FNBA, the lien on the shopping center property was reassigned to Sagamore Associates. The appellant contends that the release of lien, when read in conjunction with the collateral transfer of note, would give a hypothetical purchaser "inquiry" notice that Sagamore Associates still held a prior (second) mortgage on the property. Therefore, the appellant argues, because the hypothetical purchaser could not acquire BFP status ahead of the "true" owner (Sagamore Associates), the debtor is not entitled to avoid Sagamore Associates' second mortgage pursuant to § 544(a)(3) of the Code.

■ Although the Code does not define the term "bona fide purchaser," the language of § 544(a)(3) makes clear that *actual* knowledge of an encumbrance—whether that of the trustee, the debtor, or any creditor—will not divest the trustee of his power to avoid the debtor's obligation. *Sandy Ridge Oil Co., Inc. v. Centerre Bank Nat'l Ass'n (In re Sandy Ridge Oil Co., Inc.),* 807 F.2d 1332, 1335–36 (7th Cir.1986). Nevertheless, the United States Court of Appeals for the Seventh Circuit has held that if a hypothetical purchaser would have constructive notice of an encumbrance, the trustee may not invoke the avoiding power of § 544(a)(3). *Id.* at 1336; *McCannon v. Marston,* 679 F.2d 13, 17 (3d Cir.1982).

Sagamore Associates contends that the bankruptcy court ignored the proposition that, under Indiana law, constructive notice includes inquiry notice. Specifically, the ap-

---

**2.** The terms "trustee" and "debtor" are used interchangeably in Chapter 11 cases. *See, e.g.,* 11 U.S.C. §§ 1107, 1108.

**3.** Section 544(a) of the Code provides in relevant part:

> **(a)** The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obli-

gation incurred by the debtor that is voidable by—

> **(3)** a bona fide purchaser of real property ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3) (1994).

pellant argues that (1) the collateral transfer of note and the release of lien, when read together, are ambiguous as to which note FNBA intended to release; (2) there is no evidence in the title record to show that the collateral transfer of note was converted to an outright assignment of the interest; (3) the release of lien was signed in FNBA's individual capacity rather than in any attorney-in-fact capacity for Sagamore Associates; (4) the collateral transfer of note does not grant to FNBA the explicit authority to release the underlying mortgage and promissory note; and (5) because the release of lien does not contain the signatures of two officers, the document was not entitled to be recorded under Indiana Code § 32–8–15–1(d).

First, even examining the title record under a *de novo* standard of review, this court cannot fault the bankruptcy court's conclusion that the release of lien is unambiguous when read in conjunction with the collateral transfer of note. As the bankruptcy court correctly noted, the release discloses the date of the lien (December 27, 1983), the amount secured by the lien ($5.7 million), the maker of the note (Sagamore Park Properties), and the payee (Sagamore Park Centre Associates Limited Partnership). The release also identifies FNBA as the holder of the note and lien, and indicates that the note and lien are described in the "Collateral Transfer of Note from Sagamore Park Centre Associates Limited Partnership to The First National Bank of Amarillo, Amarillo, Texas, recorded in Mortgage 83, Page 3996 in the office of the Recorder of Tippecanoe County, Indiana." The release further states that the property which is subject to the lien is described in an exhibit attached thereto. There can be no doubt that the real property described in that exhibit is the same property that was subject to Sagamore Associates' mortgage. *See* Warranty Deed, Ex. B of Supp. R. on Appeal.

Despite the appellant's contention that the release of lien refers to the collateral transfer of note rather than specifically to the wraparound note, it is clear that the note described in the release is the debtor's $5.7 million note, payable to Sagamore Associates. In reviewing the collateral transfer of note identified by the release, a prospective purchaser would discover that the debtor's wraparound note, "together with … all mortgage liens … including without limitation the mortgage liens covering [the subject] real property located in Tippecanoe County," had been collaterally assigned to FNBA, and that the bank had been given the power to release the lien. The release of lien, which unambiguously shows that the property subject to the lien is the same real property described in the mortgage and the collateral transfer, concludes by stating that "[the] Holder of the note acknowledges its payment and releases the property from the lien."

Although Sagamore Associates acknowledges that the release of lien does make reference to the wraparound note, the appellant nonetheless contends that a prospective purchaser confronted by the release would be forced to inquire which note FNBA is saying has been paid—the wraparound note or one of the letters of credit described in the collateral transfer and secured by the wraparound note and mortgage. This is so, the appellant argues, because FNBA had been *paid* only for its letters of credit—not for the wraparound note. Thus, because "the release states the singular noun 'note' may include the plural noun 'notes,'" Appellant's Brief at 18, Sagamore Associates claims that a prospective purchaser would be forced to inquire further as to which note the release of lien refers.

The release of lien does state that "[w]hen the context requires, singular nouns and pronouns include the plural." However, notwithstanding the release's reference to "payment" of the note, the express language of the release makes clear that the lien being released is the lien against the Sagamore Park Shopping Centre property. There is no mention of FNBA's letters of credit anywhere in the release of lien. Furthermore, the release defines the property subject to the lien to "includ[e] any improvements"; since letters of credit do not have "improvements," a hypothetical purchaser reading the release of lien in conjunction with the collateral transfer of note would have no reason to doubt that the release operates to remove

the lien securing the payment of a $5.7 million note dated December 27, 1983, executed by the debtor and payable to the appellant.

It is irrelevant for purposes of § 544(a)(3) that the bank may have actually intended the release to address only the notes receivable and, hence, to release only the collateral transfer of the lien. Moreover, actual knowledge of the bank's intended purpose for the release—whether that of the trustee, the debtor, or any creditor—will not operate to bar the avoiding power of § 544(a)(3). The sole inquiry is whether a hypothetical purchaser, by virtue of an examination of the title record, could be charged with constructive (inquiry) notice of a prior mortgage. This court finds that a purchaser would not gain such notice from any alleged ambiguity in the release.

 The appellant gets no further with its second contention. Contrary to the appellant's argument, a release of lien need not be executed by the supposed owner of the mortgage in order to be valid, if the title record discloses that the party executing the release has the authority to do so.[4] *See Vincennes Sav. & Loan Ass'n v. St. John*, 213 Ind. 171, 179–81, 12 N.E.2d 127, 130–31 (Ind.1938). As the bankruptcy court correctly noted, the collateral transfer of note did more than simply convey an interest in the wraparound note and mortgage—it granted FNBA an irrevocable power of attorney which authorized the bank to "execute, acknowledge, and deliver at [its] option, releases of all liens and security interests constituting a portion of the Collateral."

All current statutory requirements for a valid power of attorney were fulfilled. The collateral transfer of note (1) is in writing; (2) names FNBA as attorney-in-fact; (3) gives the bank the authority to act on behalf of Sagamore Associates; and (4) was signed in the presence of a notary public by G. Michael Horton, managing general partner of Sagamore Associates. *See* IND.CODE § 30–5–4–1 (1993). Moreover, because the collateral transfer of note was recorded at the time of its execution, FNBA was entitled as attorney-in-fact to record the release of lien. *See*

*id.* § 30–5–3–3(b). Thus, it is irrelevant for purposes of § 544(a)(3) whether the collateral transfer of note constituted an outright assignment of the interest.

 The appellant also argues that FNBA's failure to sign the release of lien as attorney-in-fact for Sagamore Associates, when combined with the ambiguity of the release of lien, serves to heighten the necessity for further inquiry. Indeed, Sagamore Associates contends that the bankruptcy court's reliance upon presumptions of capacity "misses the point." However, the appellant's argument proves too much. First, as discussed above, the release of lien is not ambiguous—it clearly and concisely describes the property encumbered by the second lien and, by its express language, proceeds to release that lien. Second, nothing under Indiana law required the bank to indicate on the release of lien that it was signing as an attorney-in-fact.

A prospective purchaser reading both the collateral transfer of note and the release of lien would be entitled under Indiana law to assume that FNBA had signed the release in its capacity as attorney-in-fact for Sagamore Associates. The bank's power to release the lien is evidenced by the reference in the release to the collateral transfer of note, which granted the power of attorney to FNBA. In Indiana, "[a] written power of attorney that purports to be signed by the principal named in the power of attorney is presumed valid"; a party is justified in relying upon the signature of the principal "unless the party has actual knowledge that the power was not validly executed." IND.CODE § 30–5–8–2 (1993). Moreover, a party relying upon the attestation of the attorney-in-fact need not inquire as to the validity of the power of attorney or whether the attorney-in-fact is authorized to act. *Id.* § 30–5–8–4.

 The appellant's argument that the collateral transfer of note does not grant FNBA the explicit authority to release the underlying mortgage and promissory note similarly lacks merit. Under the collateral transfer of note, Sagamore Associates gave the bank the rights of an owner—including

---

4. The mortgage, collateral transfer of note, and release of lien comprise the title record.

the right to sell the wraparound note and mortgage upon a default, the right to collect rents from the property upon a default, and the right to release the liens and security interests on the collateral. Thus, whether explicitly stated or not, the bank clearly had the requisite authority to release the underlying mortgage and promissory note.

■ Finally, Sagamore Associates argues that because neither the collateral transfer of note nor the release of lien contain the signatures of two officers pursuant to Indiana Code § 32–8–15–1(d), the release was not entitled to be recorded. Indiana Code § 32–8–15–1 provides in relevant part:

(a) It shall be lawful for:

 (1) the ... attorney-in-fact ... of any national bank ...; or

 (2) the ... attorney-in-fact ... of any other corporation doing business in Indiana;

to release upon the record mortgages ... and other record liens, upon payment of the debts secured by the liens.

 . . . . .

(d) ... However, no release by the attorney-in-fact shall be entitled to record until an instrument in writing duly signed and acknowledged by any two (2) officers of the national bank ... or any other corporation granting authority, particularly setting forth and specifying the power or authority given, granted, or conferred, shall have been duly recorded in the recorder's office of the county where the release is to be recorded.

 . . . . .

IND.CODE § 32–8–15–1 (1993). Sagamore Associates complains that the bankruptcy court, although correct in finding that FNBA is not a "corporation doing business in Indiana," failed to address the fact that FNBA is a "national bank."

■ The appellant misconstrues the statute on two levels. First, there is no requirement under part 1(d) that the *release of lien* must contain the signatures of two officers:

only the document granting the power or authority to record a release (*i.e.*, the power of attorney) need be signed by two officers.[5] Second, while it is true that the collateral transfer of lien does not contain the signatures of two officers as required under part 1(d), the fact that FNBA is a national bank does not bring the document within the statute.

By its express language, Indiana Code § 32–8–15–1(d) regulates the circumstances in which attorneys-in-fact *of* national banks and other corporations doing business in Indiana may release liens upon the public record. Thus, the statute applies only to powers of attorney given *by* national banks and corporations. In the present case, the attorney-in-fact releasing the lien *was itself a national bank*, acting pursuant to the authority granted by a partnership. Nothing in the statute suggests that it applies to powers of attorney given *to* national banks and corporations. Therefore, the fact that the collateral transfer of note does not contain the signatures of two officers is not fatal to its recordation.

Accordingly, for the foregoing reasons, this court finds that the bankruptcy court did not err in holding that the release of lien conferred "bona fide" purchaser status on the debtor pursuant to 11 U.S.C. § 544(a)(3).

### C. Opinion Testimony

■ Sagamore Associates' second claim is that the bankruptcy court erred in refusing to admit expert opinion testimony pursuant to Rules 702 and 704(a) of the Federal Rules of Evidence. Specifically, the appellant contends that the issue before the bankruptcy court was not purely a question of law, and urges this court to find that the bankruptcy court committed reversible error by excluding opinion testimony that would have assisted the trier of fact in determining whether, under Indiana title examination practices, a hypothetical purchaser would take title free of the second mortgage.

■ In reviewing the bankruptcy court's application of Rule 702, this court's inquiry is

---

5. The appellant's argument that the release does not afford constructive notice (by virtue of being defectively recorded), *see* Appellant's Brief at 21–22, seemingly is in tension with its argument elsewhere in its brief that, due to the release's ambiguity, a hypothetical purchaser would have constructive notice of a prior mortgage.

governed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *See Cummins v. Lyle Indus.*, 93 F.3d 362, 366–67 (7th Cir.1996). The court must first undertake a *de novo* review of whether the bankruptcy court properly followed the analytical framework established by the Supreme Court in *Daubert.* *See Mars v. United States,* 25 F.3d 1383, 1383–84 (7th Cir.1994). Provided the bankruptcy court adhered to *Daubert's* parameters, this court may not disturb the bankruptcy court's findings unless they are manifestly erroneous. *See Bradley v. Brown,* 42 F.3d 434, 436–37 (7th Cir.1994). "The decision to allow or to exclude expert testimony is committed to the sound discretion of the [trial] court." *Cummins,* 93 F.3d at 367 (alteration supplied); *see Bradley,* 42 F.3d at 436–37.

▮ Under the *Daubert* analysis, the trial court first must determine whether the expert's testimony is reliable. As the Seventh Circuit stated in *Bammerlin v. Navistar Int'l Transp. Corp.,* 30 F.3d 898 (7th Cir.1994), "[a] [trial] judge should assure himself, before admitting expert testimony, that the expert knows whereof he speaks." *Id.* at 901 (alteration supplied). Next, the trial court is required to decide "whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue." *Porter v. Whitehall Lab., Inc.,* 9 F.3d 607, 616 (7th Cir.1993); *see Deimer v. Cincinnati Sub–Zero Prods., Inc.,* 58 F.3d 341, 345 (7th Cir.1995).

At trial before the bankruptcy court, Sagamore Associates attempted to introduce the opinion testimony of two expert witnesses—Robert Blough, chief title attorney for the Ticor Title Insurance Company ("Ticor") in the State of Indiana, and William K. Bennett, an Indiana attorney with extensive experience in the field of real estate title examination. Although the bankruptcy court did receive Mr. Blough's deposition testimony into evidence insofar as it related to his knowledge as custodian of documents, the court sustained the debtor's objection to that portion of Mr. Blough's testimony in which he

discussed the effect of the release of lien, on the ground that it was not "part and parcel of what ... th[e] deposition was about." [6] Bankr.Tr. (May 9, 1995), Ex. 17 of R. on Appeal, at 32. The court also excluded live testimony by Mr. Bennett as to the effect of the release, holding that the question of whether a hypothetical purchaser would take free of the second mortgage was a legal conclusion, and that Mr. Bennett's testimony in that regard would not assist the court in understanding the evidence. Ultimately, the appellant submitted the opinion testimony of both witnesses by offer of proof.

The reliability of the expert witnesses' proposed testimony was never at issue in the present case. Indeed, neither the title attorneys' qualifications to testify as expert witnesses nor their professed opinions as to the state of the title could render their testimony unreliable in the sense that, for example, an uncorroborated scientific theory is considered unreliable. Thus, because the bankruptcy judge could readily conclude from the witnesses' qualifications and experience that each "knew whereof he spoke," the only inquiry here is whether the bankruptcy court abused its discretion by finding that the testimony would not assist the court in understanding the evidence.

▮ Under Indiana law, "the legal effect of written documents is a question of law for trial courts to decide, whether they be ambiguous or unambiguous." *Duchon v. Ross,* 599 N.E.2d 621, 625 (Ind.Ct.App.1992); *see Flying Squadron Found. v. Crippen,* 201 Ind. 482, 169 N.E. 843 (1930). Here, the bankruptcy judge determined that the issue of whether a hypothetical purchaser would take title free of the second mortgage was a question of law to which he was entitled to reach his own conclusion, with or without the benefit of expert testimony:

> I recognize that an expert witness may testify as to the ultimate question before the Court. However, in this instance, the ultimate question before the Court is a legal conclusion. Given these facts, those three documents, will a BFP take free and clear, that is my call based upon the evidence presented here today, and Rule 702

---

6. The appellant declined the court's offer to adjourn until Mr. Blough could be produced as a live witness and subjected to cross-examination by the debtor.

utilizes as the threshold for receiving expert testimony as being whether or not that testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. I don't believe I need his help. I don't think that there is anything that he is going to tell me from that witness stand that is going to be any different from what you could put in a brief, counselor. We've got the facts, three documents. What do they mean? It's an issue of the contents of those documents and the applicable law in the State of Indiana.

Bankr.Tr. (May 9, 1995), Ex. 17 of R. on Appeal, at 51–52. This court cannot say that the bankruptcy court abused its discretion by finding that an expert's opinion as to the state of title would not assist the court in construing the legal effect of a document in the chain of title. Accordingly, the appellant's second claim must fail as well.

### CONCLUSION

For the reasons described above, the bankruptcy court's order sustaining the debtor's objection and disallowing the appellant's claim is **AFFIRMED.** This appeal is **DISMISSED. IT IS SO ORDERED.**